**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,**
Plaintiff,

v.

**Briley SHOEMAKER, Leo A. Levine and M.A.P., Inc., Defendants.**

**Civ. A. No. 85–2697.**

United States District Court,
S.D. Texas,
Houston Division.

April 5, 1994.

---

John L. Meredith, Woodard, Hall & Primm, Houston, TX, for Massachusetts Mut. Life Ins.

James M. McGraw, Odette M. Cardwell, Looper Reed Ewing & McGraw, Houston, TX, for Briley Shoemaker.

Jan T. Steinberg, Houston, TX, for Leo A. Levine, M.A.P., Inc.

---

Joe H. Reynolds, Reynolds, Cunningham, Peterson & Cordell, Houston, TX, for Tom Gray, Tom Gray Management Co.

James H. Elder, III, Houston, TX, for garnishee, Guardian Sav. & Loan Ass'n.

Mitchell J. Buchman, Eikenburg & Stiles, Houston, TX, for First City, Texas–Houston, N.A., garnishee.

Susan S. Soussan, Richie & Greenberg, P.C., Houston, TX, for Compass Bank, garnishee.

Peveril O. Settle, III, Legal Dept., Dallas, TX, for garnishee, NCNB Texas Nat. Bank.

Louis H. Salinas, Jr., Houston, TX, for garnishee, First Interstate Bank of TX, N.A.

Donald C. Templin, Christina L. Ewing, John J. Edwards, Haynes and Boone, Dallas, TX, for garnishee, Southwest Sav.

Kevin P. Erwin, Akin, Gump, Strauss, Hauer & Feld, Houston, TX, for Guar. Federal Sav. Bank.

Rhonda R. Chandler, Bonham, Carrington & Flox, Timothy M. McCloskey, Houston, TX, for garnishee, San Jacinto Sav. Ass'n.

Walter B. Stuart, IV, Linda L.S. Moroney, Vinson & Elkins, Houston, TX, for United Sav. Ass'n of Texas FSB.

Phillip C. Snyder, Liddell, Sapp, Ziveley, Hill & Laboon, Houston, TX, for garnishee, Texas Commerce Bank Nat. Assoc.

Craig A. Bernstein, Shaver, Boomer, Sanford, Wathen and Bethune, Dallas, TX, for garnishee, Bank One, Texas N.A.

John L. Meredith, Woodard, Hall & Primm, Houston, TX, Atty. in charge of Interpleader for plaintiff.

James Muisteri, Sewell & Riggs, Houston, TX, Atty. in charge for garnishee, Benjamin Franklin Sav. Assoc.

## ORDER

HITTNER, District Judge.

Pending before the Court is the Application for Turnover Relief filed by plaintiff Massachusetts Mutual Life Insurance Company ("Mass Mutual"). Having considered the application, the submissions on file, the arguments of counsel in a hearing conducted before the Court on August 31, 1993, and the applicable law, the Court determines that the application should be granted, subject to the limitations contained herein.

On March 7, 1990, this Court signed a judgment in favor of Mass Mutual, awarding actual damages in the amount of $1,477,-521.66 plus prejudgment and post judgment interest against the defendant Briley Shoemaker ("Shoemaker"), and defendants Leo Levine ("Levine") and M.A.P., Inc. ("M.A.P."). The Court also awarded punitive damages in the amount of $350,000.00 plus postjudgment interest against Levine and M.A.P. and punitive damages in the amount of $850,000.00 plus postjudgment interest against Shoemaker. Mass Mutual collected against Levine, M.A.P., and Shoemaker pursuant to joint and several liability and collected the full amount of punitive damages assessed against Levine and M.A.P. Mass Mutual has collected only $10,300.00 from Shoemaker on the judgment. Shoemaker's unpaid portion of the judgment presently totals $839,700.00, plus postjudgment interest.

In its application for turnover relief, Mass Mutual presents evidence that Shoemaker earns annual wages approximating $48,000.00 from National Employee Benefit Company and annual commissions approximating $19,-500.00 from various insurance companies. Mass Mutual requests the Court to order Shoemaker to turn over all non-exempt insurance commissions to satisfy the judgment in the above referenced cause. Mass Mutual also requests that Shoemaker be required to provide an accounting no later than five business days after each delivery of the aforementioned insurance commissions.

The collection of unpaid commission payments is governed by section 42.001(d) of the Texas Property Code, which states: "Unpaid commissions for personal services not to exceed 25% of the aggregate limitations prescribed by Subsection (a) are exempt from seizure and are included in the aggregate." TEX.PROP.CODE § 42.001(d) (Vernon Supp. 1993).[1] Shoemaker contends that this ex-

---

1. The aggregate limitation referred to in the stat-   ute is the personal property exemption of $60,-

emption applies to each individual commission payment due at any given point, up to $15,000 (i.e., 25% of $60,000). Mass Mutual argues that the exemption for commission payments applies only as a one time exemption to the aggregate of these monies, up to the $15,000 limit and that all subsequent commission payments, paid or unpaid, are non-exempt.

Interpretation of this subsection of the Texas Property Code is a matter of first impression both for Texas state courts and in the Fifth Circuit. When construing a state statute, the Court must determine how the statute would be interpreted by the highest state court. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Thus, the Court is charged with ascertaining the intent of the Texas Legislature in enacting this statute. *See Ex parte Roloff,* 510 S.W.2d 913, 915 (Tex.1974). In determining legislative intent, courts should be guided by the plain language of the statute, if possible. Where an ambiguity, defect, or omission exists in the statute, courts interpret the meaning of statute through other means. *Woods v. Littleton,* 554 S.W.2d 662, 665 (Tex.1991); *City of Mason v. West Texas Utilities Co.,* 150 Tex. 18, 237 S.W.2d 273, 278 (1951). In the event the "legislative intent is illusive and unclear ... the courts must resort to rules of construction to give meaning to legislative enactments." *See Texas v. Shoppers World, Inc.,* 380 S.W.2d 107, 111 (Tex.1964); *State v. Kaiser,* 822 S.W.2d 697, 700 (Tex.App.—Fort Worth 1991).

In this case, interpretation of section 42.-001(d) is necessary because the statute is subject to two equally viable interpretations. Specifically, section 42.001(d) is ambiguous because it is not clear whether aggregated commission payments should be subjected to a one time exemption of $15,000, as Mass Mutual suggests, or whether individual commission payment up to $15,000 are protected, as Shoemaker contends.

The Texas Legislature originally intended to amend section 42.001 of the Texas Property Code for the sole purpose of compensating for the effect of inflation on the personal property limitations (by increasing the personal property exemption from $36,000 to $60,000). *See Senate Jurisprudence Committee Excerption,* Tex.S.B. 654, 72nd Leg., (Comm.Print March 26, 1991). However, prior to enactment of the modified statute, the legislators added subsection (d), after all discussions of the proposed changes had been concluded in the applicable subcommittees. Subsection (d) was intended to provide commission earners with protection similar to that provided to wage earners. In enacting subsection (d), the record indicates that house members stated:

> Unpaid commissions for personal services should be exempt so that those working under commissions would be covered *like other wage earners.* However, caps should be placed on high commissions, as the bill would do. *House Committee on Financial Institution, Bill Analysis,* Tex.H.B. 1708, 72nd Leg., R.S. (1991) (emphasis added).

In the past, Texas law, pursuant to the exemption provisions, treated individuals who earn all or a portion of their income via commissions substantially more severely than other wage earners. It was generally recognized that commission payments were specifically *non-exempt* from attachment or garnishment. *See Pitts v. Dallas Nurseries Garden Center, Inc.,* 545 S.W.2d 34, 36 (Tex. Civ.App.—Texarkana 1976, no writ); *In re Perciavalle,* 92 B.R. 688, 691 (W.D.Tex.1988). As a result, individuals whose entire income was based on commission earnings were seriously disadvantaged. Section 42.001(d) is the legislature's attempt to alleviate this incongruity.

Unfortunately, the plain language of subsection (d) is subject to the two equally plausible interpretations espoused by each party to this suit. Neither interpretation fairly addresses all of the issues surrounding the relationship between judgment debtors earning commissions and judgment creditors. The one-time exemption favored by Mass Mutual is inequitable as to those who earn their entire income from commission payments. This interpretation would leave these individuals with only $15,000 for the

000. Tex.Prop.Code § 42.001(d) (Vernon Supp. 1993).

*entire* time they work on commission. Similarly, an interpretation that combines the commission payments on a yearly basis is equally inequitable. In that instance, the commission earner would effectively have an annual income of only $15,000 per year.

The alternative interpretation is also problematic. If each commission payment is compared to the aggregate limitation, and only that portion greater than $15,000 is subject to attachment or garnishment, the purposes of the statute may be circumvented. As aforementioned, one purpose of the amendment was to allow judgment creditors access to excessive commission payments, by exempting only up to $15,000. Commission earners could potentially contract to have their commission payments structured as to *never* exceed the limitation, thereby leaving judgment creditors unable to collect on their judgment.

The legislative history indicates that commission earners should be treated essentially the same way wage earners are treated. Thus, this Court is compelled to impose the latter interpretation. Pursuant to Texas law, wage earners' salaries are only exempt while their wages are "current." Wages cease to be "current" for purposes of the exemption laws when they "are paid to and received by the wage earner." *American Express Travel Related Services v. Harris,* 831 S.W.2d 531, 532 Tex.App.—Houston [14th Dist.] 1992, no writ). *See also Buttles v. Navarro,* 766 S.W.2d 893, 894 (Tex.App.—San Antonio 1989, no writ); *Barlow v. Lane,* 745 S.W.2d 451, 453 (Tex.App.—Waco 1988, writ denied). In effect, it is only the *latest* unpaid salary check for the particular pay period that is exempt under this section because all other checks have been "paid to and received by the wage earner." *American Express Travel Related Services,* 831 S.W.2d at 532. Therefore, the legislative intent to treat commission earners similar to the way the statute deals with wage earners necessitates a finding that the exemption in section 42.001(d) apply to *individual* commission payments.

Other states avoid the problem created in this case by carefully drafting their exemption statutes so that wage and commission earners are treated equally. In these states, an exemption, typically, is allowed for "income" or "earnings." *See* N.Y. PERS. PROP.LAW § 48–a (McKinney 1992) ("the amount collectible in any month shall not exceed ten per centum of the assignor's future *earnings* payable in such month"); CAL. CIV.PROC.CODE § 487.020 (West 1994) ("the following property is exempt from attachment: (c) 'Earnings' . . ."); *Cf.* MISS.CODE ANN. § 85–3–23 (1972). The terms in these statutes are then defined to specifically include both wages and commissions, and other sources as necessary to avoid any ambiguity. *See e.g.* CAL.CIV.PROC.CODE § 706.011 (West 1994) (defining earnings as compensation payable by an employer to an employee for salary, commission, bonus, or otherwise); MISS.CODE ANN. § 93–11–101 (1972) (defining income as any form of periodic payment to an individual, regardless of source, including, but not limited to wages, salary, and commission).

The Texas Legislature could have adopted similar language to more effectively define the exemption for commission payments. Instead, it has created an irreconcilable ambiguity in the statute. Regardless of which party's interests will be unfairly compromised, the Court is constrained by the existing state law and legislative history.

Based on the foregoing, the Court ORDERS the following:

1. Application for Turnover Relief is GRANTED. Shoemaker shall turnover all property, monies, checks, documents and records related to renewal insurance commissions, in excess of the $15,000 designated exempt amount, to the court registry within five business days of receipt of such commissions by Shoemaker or his agent. In addition, Shoemaker is ordered to turn over any future renewal insurance commissions, in excess of the $15,000 designated exempt amount per commission payment, on a continuing basis within five business days of receipt of such benefits until the judgment is paid.

2. Request for Accounting is GRANTED IN PART. In the event of a disagreement over the amounts of non-exempt

34

commission payments, Shoemaker shall provide an accounting of property, wages and commissions to Mass Mutual.

3. Request for attorney's fees is DE-NIED WITHOUT PREJUDICE as to refile with supporting affidavits.